IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID CAIN, JR., ) | |
| ) | |
| Petitioner, ) | Civil Action No. 7:21cv00338 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| WARDEN STREEVAL, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Respondent. ) | |

Petitioner David Cain, Jr., a federal inmate proceeding *pro se*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging his convictions for Hobbs Act extortion under the savings clause of 28 U.S.C. § 2255(e).[1] Respondent moved to dismiss the petition for lack of jurisdiction because Cain has not satisfied the requirements of the savings clause. After review of the record, the court agrees and will grant respondent's motion and dismiss Cain's petition.

I.

In October 2007, a grand jury in the Western District of New York indicted Cain on numerous federal charges stemming from his use of threats and violence to gain control of tree service and logging markets in Upstate New York. *See United States v. Cain*, 671 F.3d 271, 278−79 (2nd Cir. Jan. 31, 2012).[2] During Cain's six-week trial, several witnesses testified that Cain threatened his competitors and vandalized their equipment to eliminate competition and

---

[1] Cain is confined at the United States Penitentiary in Lee County, which is located in this judicial district.

[2] The facts concerning Cain's underlying criminal proceedings are taken from the Second Circuit's opinion on Cain's direct appeal.

usurp their businesses. According to Cain's associates, he routinely made violent threats against competitors to deter them from competing with him for specific jobs. When Cain lost out to competitors, he retaliated by destroying their equipment and other business assets. Specifically, he slashed their tires, stole their logging equipment, and set their trucks and other business property on fire. In one incident, Cain took revenge on a competitor by slashing more than 40 tires; overturning three engines and dumping their fuel on the ground; tearing apart the instrument panel on a skidder; and puncturing two radiators. He also set a bulldozer on a collision course for the competitor's house; fortunately, it ran out of gas before reaching Cain's intended target . He later told the same competitor that he would put him in the hospital if he refused to leave the area. Another competitor testified that he sold his tree service business to Cain for less than half its estimated value, out of fear of what Cain might otherwise do to him or his business.

In December 2007, a jury convicted Cain of 16 counts, including Hobbs Act extortion, fraud, racketeering, use of explosives in the commission of a felony, and witness intimidation. On July 12, 2009, the court ordered Cain to pay restitution in the amount of $599,330.45 and sentenced him to a total term of incarceration of 660 months for his role in the offenses.

Since his sentencing, Cain has challenged his Hobbs Act extortion convictions through many appeals, motions, and petitions. The Hobbs Act criminalizes extortion that affects interstate commerce. 18 U.S.C. § 1951(a). The statute defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). To commit extortion, a person must "obtain property from another party." *Scheidler v. Nat'l Org. for Women,*

*Inc.*, 537 U.S. 393, 404 (2003). Obtaining property involves "not only the deprivation but also the acquisition of property." *Id.* Extortion requires that the "property extorted must . . . be transferable—that is, capable of passing from one person to another." *Sekhar v. United States*, 570 U.S. 729, 734 (2013).

Cain filed a direct appeal to the Second Circuit, challenging, among other issues, the strength of the evidence supporting his Hobbs Act extortion convictions. Relying on the Supreme Court's decision in *Scheidler v. National Organization for Women, Inc.*,[3] Cain asserted that his extortion convictions should be vacated because there was insufficient evidence to meet the "property" and "consent" elements of extortion. Cain argued that there was no evidence that he had obtained any property of value from his victims, such as a specific tree job or quantifiable segment of the market, and that there was no evidence of consent because he was not trying to frighten his competitors out of business but rather to immobilize their businesses by vandalizing their property.

The court affirmed Cain's extortion convictions in a published opinion. *See Cain,* 671 F.3d 271. In so doing, the court noted that Cain's extortion included his use of threats and

---

[3] In *Scheidler*, anti-abortion activists attempted to close abortion clinics by interfering with staff and women seeking access to the clinics. 537 U.S. at 400−01. The National Organization of Women and two clinics brought a civil RICO action against the anti-abortion activists, alleging a pattern of extortionate racketeering acts under the Hobbs Act and state law. *Id.* at 398. The Court characterized the property the defendants allegedly extorted as the "right to seek medical services from the clinics, the clinic doctors' rights to perform their jobs, and the clinics' rights to provide medical services and otherwise conduct their business." *Id.* at 399. In holding that such conduct was not extortionate, the Court stated that "even when [the] acts of interference and disruption achieved their ultimate goal of 'shutting down' a clinic that performed abortions, such acts did not constitute extortion because [the defendants] did not 'obtain' [plaintiffs'] property." *Id.* at 404−05. While "[the defendants] may have deprived or sought to deprive [the plaintiffs] of their alleged property right of exclusive control of their business assets, . . . they did not acquire any such property." *Id.* at 405. Although the conduct did not constitute extortion because the defendant could not obtain the property for himself, the court determined that such conduct may have constituted the New York offense of coercion. *See Scheidler*, 537 U.S. at 404−08; *see also* N.Y. Penal Law § 135.60 ("A person is guilty of coercion . . . when he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in . . . .")

force against competitors "in order to enlarge his share of the tree service and logging markets." *Id.* at 282. The court found that the evidence was "more than sufficient for the jury to conclude beyond a reasonable doubt that Cain's purpose was to frighten his victims into ceding their rights to compete—indeed their very businesses—to him, and that, by engaging in a campaign of vicious arson and vandalism against them, he had taken substantial steps toward accomplishing that goal." *Id.* at 284. Quoting one of Cain's associates, the court noted that "[Cain] basically wanted to put the other tree businesses out of service so he could be number one in Niagara County." *Id.* at 283. He did this by slashing tires, threatening physical violence, and hiring associates to set fire to a competitor's business, to the point that one competitor sold his entire business to Cain so as to avoid further repercussions. *Id.* at 280−81. From this evidence, the Court found ample proof of both the "property" and "consent" elements of the extortion offense. *Id.* at 284.

In December 2013, Cain filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, contending that his trial and appellate counsel provided effective assistance, including by failing to argue on appeal that Cain was actually innocent of the Hobbs Act extortion convictions in light of the Supreme Court's decision in *Sekhar v. United States*, 570 U.S. 729 (2013). *See Cain v. United States*, No. 13cv1210-A, 2015 U.S. Dist. LEXIS 199065 (W.D.N.Y. Oct. 15, 2015). In *Sekhar*, the defendant was convicted of Hobbs Act extortion for attempting to force the general counsel for the New York State Comptroller to recommend investing in a fund managed by the defendant's company by threatening to expose the general counsel's alleged extramarital affair. 570 U.S. at 731. The Court characterized the property right as "the general counsel's intangible property right to give his disinterested legal opinion

. . . free of improper outside interference." *Id.* at 737−38 (internal quotation marks omitted). The Court concluded that while the defendant could deprive the general counsel of this right, he could not possibly have "obtained" it for himself. *See id.* The court reiterated that extortion requires the victim to part with property, and the extortioner to "obtain" it. *Id.* at 736−37. The court determined that attempting to compel a person to recommend that his employer approve an investment did not constitute the "obtaining of property from another" and, therefore, the property was not transferable and the defendant's Hobbs Act attempted extortion conviction was reversed. *See id.*

Under Cain's reading of *Sekhar*, he may have been responsible for coercion, but he was not guilty of Hobbs Act extortion. Cain argues that acts of destroying competitors' property were intended to prevent them from exercising lawful trade and to interfere with their ability to run their businesses, not to "obtain" the victims' property. *Cain v. United States*, No. 13cv1210-A, 2015 U.S. Dist. LEXIS 199065 (W.D.N.Y. Oct. 15, 2015). The court concluded that Cain's assertion was "factually incorrect" and that the record established that Cain tried to put competitors out of business so that he could "*take or acquire* their business or market share." *Id.* The court noted that *Sekhar* expressly reserved the question of whether threats to a business competitor that produce a transfer of a customer's potential revenue violate the Hobbs Act. *Id.* (citing *Sekhar*, 133 S. Ct. at 2725 n.2 ("It may well be proper under the Hobbs Act for the Government to charge a person who . . . obtains goodwill and customer revenues by threatening a market competitor[.]") (internal quotations and citations omitted)). The court determined that *Sekhar* did not resolve any issue in Cain's favor and that it did not change existing law. Accordingly, that court denied Cain's § 2255 motion.

Cain filed a motion for reconsideration of the denial of his § 2255 motion, arguing that the court "erred in its analyses of his claims" of ineffective assistance of counsel and "failed to make factual findings and state conclusions of law sufficient to support" the denial of his § 2255 motion. *Cain v. United States*, 2017 U.S. Dist. LEXIS 62516, at *2 (W.D.N.Y. Apr. 25, 2017). The court found Cain's assertions to be without merit and denied his motion. *Id.* at *9–11. The court also noted that Cain's "insistence" that the Supreme Court's decision in *Sekhar* compelled a finding of Cain's actual innocence was "misplaced." *Id.* at *9 n.3.

On June 3, 2019, Cain filed a § 2241 petition in the Northern District of Illinois, where he then was incarcerated. *Cain v. Hudson*, No. 19 C 3748, 2020 U.S. Dist. LEXIS 31673 (N.D. Ill. Feb. 25, 2020). In his petition, he argued, among other claims, that he was actually innocent of Hobbs Act extortion under the Supreme Court decision in *Ocasio v. United States,* 572 U.S. 282 (2016), because the evidence was insufficient to show that he "acquired property with his victims' consent," as required by the Hobbs Act. *Id.* at *6. Cain argued that, under *Ocasio*, the Supreme Court had narrowed the scope of what constitutes "consent" for purposes of Hobbs Act extortion. *Id.* The Illinois federal court disagreed, finding that *Ocasio* had "simply described" the parameters of existing law in a manner "fully consistent with how the Second Circuit described the elements in addressing Cain's insufficiency of the evidence argument" in his direct appeal. *Id.* at *6–7; *see also Cain,* 671 F.3d at 283–84. Because *Ocasio* did not change the law underlying the extortion convictions, the court adopted the Second Circuit's findings on the insufficiency of the evidence challenge and dismissed Cain's § 2241 petition on the merits.

Cain then filed a motion for reconsideration of the denial of his § 2241 petition, arguing that the court had "overlooked" controlling law and facts; that the Second Circuit's reasoning on direct appeal had been "abrogated by *Ocasio*"; and that the Illinois court had "applied the wrong standard of review." *Cain v. Hudson*, No. 19 C 3748, 2020 U.S. Dist. LEXIS 57883, at *4 (N.D. Ill. Apr. 2, 2020). In his motion for reconsideration, Cain relied not only on *Ocasio*, but also on *United States v. Kirsch*, 903 F.3d 213, 227 (2nd Cir. 2018),[4] to support his argument that his conduct no longer met the statutory requirements for Hobbs Act extortion. The court noted that the portions of *Kirsch* that Cain relied on rested on the Supreme Court's decisions in *Scheidler* and *Sekhar* that Cain "could have invoked in his § 2255 motion . . . and which, therefore, cannot undergird his § 2241 petition based on the § 2255(e) savings clause." *Id.* at *5. The court concluded that the decision in *Kirsch* "distinguished situations where the defendant interfered with only the victim's non-transferable rights, which could constitute coercion, from situations where the defendant interfered with the victim's rights *and* attempted to obtain property himself, which could constitute extortion." *Id.* at *6. Finding no error in its previous decision, the court denied Cain's motion for reconsideration.

Cain appealed the district court's decision and the Seventh Circuit affirmed, finding that Cain could not meet the savings-clause test to pursue his § 2241 petition. *Cain v. Rivers*, 827 F. App'x 583 (7th Cir. Sept. 18, 2020). Cain argued that *Ocasio* had narrowed the elements

---

[4] In *Kirsch*, the defendant union leader sought to extort property that Local 17 members could clearly "obtain": wages and benefits from construction contractors. 903 F.3d at 228. The court determined that "[w]ages and benefits are 'capable of passing from one person to another,'—in this case, from the employer to the employee—and are therefore 'transferable.'" *Id.* (citing *Sekhar*, 570 U.S. at 734). Indeed, when an employer pays wages and provides benefits to an employee, the employer "part[s] with" that property, and the employee "gain[s] possession" of it. *Id.* (citations omitted). Accordingly, the court concluded Kirsch's conviction met the requirement recognized in *Scheidler* and *Sekhar* that the targeted property be "transferable." *Id.*

of Hobbs Act extortion, such that his conduct was no longer criminal, but the appellate court disagreed. As that court observed:

> Although in *Ocasio* the Supreme Court discussed the Hobbs Act, it did not reinterpret the elements of extortion so as to create a new rule . . . . In describing the substantive elements of extortion, the Court walked through the definitions of "property" and "consent" in the Hobbs Act, but it did not narrow or alter any element of the offense. Cain therefore cannot rely on *Ocasio* for any "new" rule. Indeed, his current challenge mirrors the arguments (premised on *Scheidler*) about "property" and "consent" that the Second Circuit rejected on direct appeal.

827 F. App'x 583, 586 (7th Cir. 2020). Cain also argued that the decision in *Kirsch* "effectively overruled the holding from his direct appeal that market share and solicitation rights are 'property' under the Hobbs Act." *Id.* The Court again disagreed, stating:

> Even if statutory-interpretation cases at the circuit level can provide a basis for relief under § 2241, *Kirsch* does not alter the legal landscape to Cain's benefit. In that case, the Second Circuit rejected a union leader's argument that the wages he sought to extort on behalf of union members did not constitute "property" under New York extortion law. It observed that the definitions of "extortion" under state law and the Hobbs Act were "nearly identical" and restated the Supreme Court's conclusions in *Scheidler* and *Sekhar* that unlawfully obtained "property" needs to be something "transferable." It did not announce a new rule of statutory interpretation or call any holdings from Cain's direct appeal into question. Therefore, *Kirsch,* like *Ocasio,* does not provide an opening for Cain to avail himself of § 2241.

*Id.* at 586 (internal citations omitted). Accordingly, the Court affirmed the denial of Cain's § 2241 petition.

Cain has now filed another § 2241 petition in this court, arguing that Second Circuit's decision in *Kirsch* changed the law such that he is no longer guilty of Hobbs Act extortion and

that the saving clause, 28 U.S.C. § 2255(e), permits him to seek relief under § 2241. The respondent has moved to dismiss the petition for lack of jurisdiction.

## II.

Generally, a federal prisoner is "required to bring collateral attacks challenging the validity of [his] judgment and sentence by filing a motion to vacate sentence pursuant to 28 U.S.C. § 2255." *In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997). But the savings clause of § 2255 allows a federal prisoner to seek relief under 28 U.S.C. § 2241 if he can show that § 2255 is "'inadequate or ineffective to test the legality of his detention.'" *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000) (quoting 28 U.S.C. § 2255(e)).

The United States Court of Appeals for the Fourth Circuit has found that § 2255 is inadequate or ineffective to test the legality of a conviction when:

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Id.* at 333–34. The requirements of the savings clause are jurisdictional. *U.S. v. Wheeler*, 886 F.3d 415, 425–26 (4th Cir. 2018). Thus, unless the petitioner meets these requirements, a district court may not entertain his § 2241 petition that challenges the validity of a federal conviction. *Id.*

The second *Jones* prong requires there to have been a change in substantive law such that the petitioner's conduct is no longer considered criminal. Cain argues that *Kirsch* is the change in substantive law establishing the legality of his conduct, but he is wrong. The Second

Circuit's decision in *Kirsch* did not announce a change in substantive law or determine that Cain's conduct is no longer criminal. Rather, the court applied existing law to the specific facts raised in *Kirsch* and determined that the wages that the union leader sought to extort on behalf of union members were "property" under New York extortion law. *Id.* at 228. Observing similarities between definitions of "extortion" under state law and the Hobbs Act, the Court reaffirmed principles set forth in *Scheidler* and *Sekhar* that unlawfully obtained property must be something "transferable." *Id.* Despite Cain's multiple attempts to convince courts otherwise, the Second Circuit's decision in *Kirsch* did not resolve any issues in Cain's favor or provide an opportunity to avail himself of § 2241.

The court concludes that Cain has not met the second prong of *Jones* and, thus, has not demonstrated that the court has jurisdiction under the savings clause of § 2255(e) to allow him to challenge the validity of his convictions in a § 2241 petition.[5]

---

[5] Moreover, Cain's petition is successive. Under 28 U.S.C. § 2244, a petitioner's ability to relitigate the same claims before different courts is limited. That provision states:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

28 U.S.C. § 2244(a).

Although the Fourth Circuit does not appear to have spoken on the issue in a published decision, there is ample caselaw from other circuits holding that § 2244(a) precludes consideration of a subsequent § 2241 petition raising the same issues as a prior petition dismissed on the merits. *E.g.*, *Queen v. Miner*, 530 F.3d 253, 255 (3rd Cir. 2008); *Simon v. United States*, 359 F.3d 139, 143 n.7 (2nd Cir. 2004) (citing *Chambers v. United States*, 106 F.3d 472, 475 (2nd Cir. 1997)); *Valona v. United States*, 138 F.3d 693, 695 (7th Cir. 1998). And, in at least three unpublished decisions, the Fourth Circuit has affirmed the dismissal of a § 2241 petition under 28 U.S.C. § 2244. *E.g.*, *Edwards v. Purdue*, 613 F. App'x 276 (4th Cir. 2015); *McLean v. Warden, FCI Estill*, 599 F. App'x 78 (4th Cir. 2015); *Trader v. United States*, 191 F.3d 448, 1999 U.S. App. LEXIS 21611 (4th Cir. 1999) (unpublished table decision).

Consistent with this authority, district courts within the Fourth Circuit also have refused to consider § 2241 petitions where the issues raised were addressed on the merits in a prior petition. *E.g.*, *Alley v. Warden*,

### III.

For the reasons stated, the court will grant the respondent's motion to dismiss Cain's petition for lack of jurisdiction.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 28th day of July, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

*FCC Petersburg*, No. 3:19cv339, 2020 U.S. Dist. LEXIS 91076, at *4 (E.D. Va. May 26, 2020); *Reynolds v. Saad*, No. 1:17cv124, 2018 U.S. Dist. LEXIS 117255, at *5 (N.D.W. Va. July 11, 2018), *aff'd,* 738 F. App'x 216 (4th Cir. 2018) (relying on § 2244(a) and the "doctrine of the abuse of the writ" to conclude that the petitioner's claims—which were raised and denied in prior petitions or could have been raised in the prior petitions—were barred from consideration); *McLean v. Warden, FCI Estill*, No. 9:13-3022-MGL-BM, 2014 U.S. Dist. LEXIS 138263, at *4 (D.S.C. Sept. 30, 2014), *aff'd* 599 F. App'x 78 (4th 2015); *Quiller v. Wilson*, No. 1:12cv426(LO/JFA), 2012 U.S. Dist. LEXIS 182292, at *9−10 (E.D. Va. Dec. 12, 2012) (calling it "well established that § 2244(a) . . . bars second or successive § 2241 applications that seek to relitigate issues that were adjudicated in a prior § 2241 proceeding").

The claims that Cain raises in his petition before this court were raised in his § 2241 petition in the Northern District of Illinois and were addressed by that court and by the Seventh Circuit on appeal. His actual innocence arguments also were rejected when brought as part of his direct appeal in the Second Circuit and his § 2255 motion in the Northern District of New York. Accordingly, the court concludes that Cain's petition is successive.